**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**FILISA D. HADDIX,**

                Plaintiff**,**

**v.**

                **CIVIL ACTION NO.: 3:15CV109
                (JUDGE GROH)**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security,**

                Defendant.

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

On September 9, 2015, Plaintiff Filisa D. Haddix ("Plaintiff"), by counsel Travis M. Miller, Esq., filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). (Compl., ECF No. 1). On December 28, 2015, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. (Answer, ECF No. 9; Admin. R., ECF No. 10). On February 4, 2016, and March 7, 2016, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 20; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 22). Following review of the motions by the parties and the administrative record, the

undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II. <u>PROCEDURAL HISTORY</u>

On April 27, 1998, Plaintiff protectively filed her first application under Title II of the Social Security Act for a period of disability and disability insurance benefits ("DIB") and under Title XVI of the Social Security Act for Supplemental Security Income ("SSI"), alleging disability that began on February 20, 1995. (R. 184). Plaintiff received Supplemental Security Income benefits based on disability as a child, and remained insured through August 1, 2011. (R. 58-62). As such, Plaintiff must establish disability on or before this date. Eligibility for these disability benefits was re-determined under the rules for determining disability in adults when Plaintiff attained age eighteen. Plaintiff's redetermination claim was initially denied on August 30, 2011 (R. 62) and denied again upon reconsideration on April 12, 2012 (R. 101). On May 11, 2012, Plaintiff filed a written request for a hearing (R. 104-05), which was held before United States Administrative Law Judge ("ALJ") Karl Alexander on November 20, 2013, in Morgantown, West Virginia. (R. 35-57). Plaintiff, represented by counsel Travis Miller, Esq., appeared and testified, as did Linda Dezack, an impartial vocational expert. (<u>Id.</u>). On February 26, 2014, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Social Security Act. (R. 15-34). On July 15, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1-5).

# III. <u>BACKGROUND</u>

## A. Personal History

Plaintiff was born on February 20, 1992, and was six years old at the time her mother, Christine Haddix, filed Plaintiff's first SSI claim. (R. 184).  She completed high school (R. 43). Plaintiff's prior work experience includes working at Walmart. (R. 46). She is not married and has no dependent children.  (R. 35-57).

## B. Medical History

### 1. Medical History Pre-Dating August 1, 2011

On January 12, 1998, Plaintiff was seen by her primary care physician, Dr. James E. Malone for evaluation of possible ADHD. (R. 402).  Plaintiff's physical exam revealed hyperactivity, a very small attention span, the inability to follow instructions completely or sit still for an extended period of time.  Plaintiff was prescribed Ritalin.  <u>Id</u>.

As a result of poor educational performance and being referred to testing, Plaintiff underwent a psychoeducational evaluation by Dr. Joseph Shaver, Ed.D., on March 11, 1998. (R. 330-333).  Plaintiff obtained a Verbal IQ score of 72, Performance IQ score or 74, and a Full Scale IQ score of 71. (R. 330).  Plaintiff failed to obtain an "adequate basal [level] on any of the major subject areas."  (R. 331).  She showed no understanding of letter-sound associations and was unable to recognize any sight words. <u>Id</u>.  She could print single digit numerals, but had difficulty performing rudimentary addition and subtraction even with cues and manipulatives.  <u>Id</u>.

On April 8, 1998, Plaintiff was seen at the West Virginia University Behavioral Medicine Department.  (R. 338).  Plaintiff was diagnosed with Attention-Deficit Hyperactivity Disorder (ADHD) and was referred to the Valley Community Mental Health

Center for behavior therapy. Plaintiff visited Valley Comprehensive Community Mental Health Center on April 14, 1998. (R 334-37). Plaintiff's documented goal was to decrease ADHD behaviors. She obtained medicine and individual therapy to treat her ADHD (R. 334).

Plaintiff was seen by her primary care physician , Dr. James E. Malone, monthly throughout the year 2001. (R. 390, 394-95). At each visit, Plaintiff obtained a refill of her Ritalin prescription. Id.

On November 6, 2004, Dr. Joseph Shaver, conducted another psychoeducational evaluation of Plaintiff who at the time was twelve years of age. (R. 4400. Testing revealed Plaintiff had the following scores: Verbal Comprehension 55, Perceptual Reasoning Index 67, Working Memory Standard Score 86, Processing Speed 80 and Full Scale IQ 63. (R. 444). Her academic achievement skill reflected significant delays in most major subject areas. (R. 441). Her adaptive behavioral skills revealed that her independent functioning, physical development, language development, numbers and time, pre-vocational activity, self-direction, and responsibility were near or above age level. Id. However she showed delays in economic functioning and socialization. Id.

On October 22, 2010, November 19, 2010, and February 4, 2011, Plaintiff presented to Dr. Malone for scheduled visits. (R. 462). Dr. Malone treated Plaintiff for ADHD. Id. Dr. Malone noted Plaintiff was feeling better. (R 462) Her attention span was better, and she appeared clinically stable. Id. Plaintiff denied having any side effects from taking Concerta and was given a refill. Id.

Plaintiff presented to Martin Levin, M.A., a licensed psychologist, on April 13, 2011, complaining of ADHD. (R. 470). Plaintiff stated that her ADHD is "not as bad as it had been." (R. 471). Her diagnosis was ADHD and Borderline Intellectual functioning. (R 473).

On November 11, 2011, Plaintiff was seen by licensed Psychologist, Jennifer Robinson, MA. Plaintiff's diagnosis included ADHD and Borderline Intellectual Functioning. (R. 458). Her mental examination showed "no indication of any formal thought disorder." Her judgment skills and remote memory were mildly deficient; while her concentration was moderately deficient. (R. 456). Her memory was within normal limits. (R. 456). Testing revealed "no learning disabilities." (R. 458). However, Ms. Robinson stated, Plaintiff "would likely have significant difficulty in any formal education setting," and would learn best with "hands on training," "or "on the job training." (R. 458).

From November 2011 to November 2012 Plaintiff presented to Valley Healthcare System for psychiatric evaluation and treatment. (R. 525-547). Individual therapy was recommended and implemented. (R. 529). Plaintiff was diagnosed with Learning Disorder, Attention Deficit Disorder and Mood Disorder. (R. 531-547) One of Plaintiff's goals was to improve communications. Id.

Plaintiff revisited Dr. Malone in January, February and March of 2012 for follow-up of ADHD and mood swings. Plaintiff was diagnosed with depression and was prescribed Zoloft. (R. 568-70). Plaintiff also continued taking Concerta.

Plaintiff was referred to Brenda K. Hinkle, M.A. by her attorney for an adaptive behavioral skills assessment. (R. 572). The Adaptive Behavior Assessment System

(ABAS) revealed that Plaintiff was "functioning at the 0.1 percentile," in the extremely low range level of adaptive skills.  (R. 572).

### School Records

Elementary school records indicated that Plaintiff needed special education services in nearly all subjects. (R. 346-389). During the 1998-1999 school year, Plaintiff spent 92% of her school day in a separate setting,  removed from the regular education environment.  (R. 358). The special education eligibility committee determined Plaintiff met the criteria for students with "mild mental impairments.  (R. 360).

On March 25, 2009, the special education committee reconvened and determined Plaintiff needed special education because she was mentally impaired.  (R. 448,450).  Her general intellectual functioning was two to three standard deviations below the mean, and she exhibited "concurrent deficits in adaptive functioning expected for her age" in at least two areas.  (R. 450).

On December 2, 2009, Plaintiff's Individualized Education Program showed that during her last year of high school, she spent 40%-79% of her time in General Education, she received special education services in Civics, Math, and English, and tests were read aloud verbatim.  R. 437-39). Plaintiff's high school transcript revealed that she received A's and B's at the end of Term 2 in 2010.  (R. 453).

### C.  Medical Reports/Opinions

#### a.  Consultative Examination Report

On November 29, 2001, Karen Edgell, M.A., a licensed psychologist conducted a psychological interview of Plaintiff for the Commissioner.  (R. 405). Plaintiff obtained a

Verbal IQ score of 59, a Performance IQ score of 65, and a Full Scale IQ score of 59. (R. 407). Plaintiff was diagnosed with ADHD and mild mental retardation. (R. 408).

Ms. Edgell evaluated Plaintiff again on January 16, 2009. (R. 415-18). At this time Plaintiff was almost seventeen years of age. Testing revealed Plaintiff obtained a Verbal Comprehension Composite Score of 50, a Perceptual Reasoning Composite Score of 69, a Working Memory Composite Score of 65, a Speed Composite Score of 59, and a Full Scale Score of 52. (R. 416). Despite, Plaintiff's age, she had a 3.2 grade equivalent reading level and 3.0 grade equivalent in mathematics. (R. 417).

### b. Residual Functional Capacity Assessment

On June 2, 2011, state agency medical consultant James W. Bartee, Ph.D., completed a mental residual function capacity ("RFC") assessment of Plaintiff. (R. 474-76). Dr. Bartee found that across the functional and adaptive domains, Plaintiff had a number of mild to moderate limitations and one marked limitation resulting in a severe impairment. (R. 476). However, Dr. Bartee concluded that the limitations do not meet a listing. In summation, Dr. Bartee concluded Plaintiff does not pose a danger to herself or others in a routine, work-like setting; she can travel to and from familiar and unfamiliar locations, and can pursue short term goals for 2-3 weeks. Id.

On December 29, 2011, Dr. Philip E. Comer completed another mental RFC assessment of Plaintiff. (R. 503). Dr. Comer found that across the functional and adaptive domains, Plaintiff had a number of mild to moderate limitations and two marked limitations. Dr. Comer concluded Plaintiff has the "emotional/mental capacity simple routine work like activity in a low pace work environment that has limited social interaction requirements and that does not require driving." (R. 505).

### D. Testimonial Evidence

At the ALJ hearing held on November 20, 2013, Plaintiff testified regarding her educational background and prior work experience. Plaintiff stated that she graduated from high school, but while there she took special education classes and had trouble with mathematics, reading, and summarizing. (R. 44-46).

Plaintiff's employment history includes working as a fast-food attendant, cashier, and babysitter. (R. 46-50). Most recently, Plaintiff worked for Wal-Mart, where she "put clothes on hangers," and answered phones. (R. 46). Plaintiff stated that she had trouble with these tasks and ended up working at Walmart for one month. (R. 47).

Plaintiff further testified that she does not cook and that if she were going to cook using a recipe she would have difficulty following the directions. (R. 52-53). She also stated that she has focus, concentration, and memory problems. (R. 53).

### Vocational Evidence

Also testifying at the hearing was Linda Dezack, a vocational expert. Upon determining Plaintiff has no past relevant work (R. 55), the ALJ questioned Ms. Dezack regarding Plaintiff's ability to perform work at varying exertional but unskilled levels. Ms. Dezack gave the following responses to the ALJ's hypothetical:

> Q: [A]ssum[ing] a hypothetical individual of the claimant's age, educational background, and lack of work history, . . . [who] would be able to perform work at any and all exertional levels; should work in a low stress environment with no production line or assembly line type of pace, no independent decision making responsibilities, and minimal changes in the daily work routine; would be limited to unskilled work involving only routine and repetitive instructions and tasks, with little to no reading, writing, or math involved. But if any were to be involved it should be no higher than eighth grade reading level, fourth grade spelling level, and third grade math abilities. The person should have no interaction with the general public, and no more occasional interaction with co-workers and

> supervisors.  Would there be any work in the regional or national economy that such a person could perform?
>
> A:    Yes, your honor. [G]arment sorter . . . laundry sorter, . . . [and] clothes folder.

(R. 55-56).

Plaintiff's attorney questioned Ms. Dezack, specifically asking "how much time an employee in this type of work. . . must be on task to remain employed." (R. 56-57).  Ms. Dezack answered that in individual must be on task ninety percent of the time, and if they were off task more than ten percent of the time they would eventually lose the job. Id.

## E.    Report of Contact Forms

A report of contact form dated October 1, 2008, states that Plaintiff "continues to be disabled due to learning difficulties, [and that Plaintiff] has no other impairments." (R. 270).

Another report of contact form dated June 23, 2011, states that Plaintiff can understand basic routine instructions and retain two to three steps in memory. (R. 293). The report also indicated that Plaintiff can maintain brief contacts with supervisors and coworkers in a non-confrontational setting. Id.

Plaintiff's final report of contact form dated December 30, 2011, states Plaintiff has the capacity for simple routine work in a low pace work environment as well as other work including surveillance system monitor, garment folder, and linen-room attendant. (R. 310).

## F.    Lifestyle Evidence

On an adult function report dated October 14, 2011, Plaintiff's mother stated that

Plaintiff needs to be reminded daily to care for herself and to take her medicine. (R. 297). She also indicated that Plaintiff enjoys being outside, running and watching television. She babysits, visits with family and sometimes attends church. She is able to assist with yard work, grocery shopping, laundry, and babysitting.

In the report, Plaintiff's mother explained how Plaintiff is mentally limited in some areas but not in others. Due to her conditions, Plaintiff has trouble understanding tasks and the ability to concentrate long enough to complete a task without being reminded. (R 300). Plaintiff does not handle stress or changes in routine well. (R. 301). At night she has difficulty sleeping and she does not manage money well. (R. 296)

## IV.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a

combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.     ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ made the following findings:

1.      The claimant attained age 18 on February 19, 2010, and was eligible for Supplemental Security Income benefits as a child for the month preceding the month I which she attained age 18.  The claimant was notified that she was found no longer disabled as of August 1, 2011, based on a redetermination of disability under the rules for adults who file new applications.

2.      Since August 1, 2011, the claimant has had the following severe impairments: depression/mood disorder, NOS; borderline intellectual functioning; history of and one current diagnosis of a learning disorder; and attention deficit hyperactivity disorder/ attention deficit disorder (20 CFR 416.920(c)).

3.      Since August 1, 2011, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      Since August 1, 2011, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: involves a low stress environment with no production line or assembly line type of pace; requires no independent decision making responsibilities and minimal changes in daily work routine; is limited to unskilled work involving routine and repetitive instructions with no more than 8th grade reading, 4th grade spelling, and 3rd grade math abilities; and should have no interaction with the general public and no more than occasional interaction with coworkers.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on February 20, 1992, and is a younger individual (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416. 964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.964).

9.      Since August 1, 2011, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exits in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant's disability ended on August 1, 2011, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(R. 20-28).

## VI.    DISCUSSION

### A.    Standard of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by

substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1968)). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." <u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws</u>, 368 F.2d at 642; <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

**B.    Contention of the Parties**

Plaintiff, in her Motion for Summary Judgment, asserts that the Commissioner's decision "is based upon an error of law and is not supported by substantial evidence." (Pl.'s Mot. at 1).  Specifically, Plaintiff alleges that the ALJ erred by failing to find Plaintiff met the requirement of Listing 12.05C, arguing that the evidence, including the Commissioner's own decisions, show that all requirements of this Listing has been met.

(Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at [9], ECF No. 21). Plaintiff asks the Court to "reverse the ALJ's decision and issue a new decision finding [Plaintiff] disabled pursuant [to] Listing 12.05C," or in the alternative " reverse the ALJ's decision and remand this matter for a full and fair hearing." (Id. at 15).

Defendant, in her Motion for Summary Judgment, asserts that the decision is "supported by substantial evidence and should be affirmed as a matter of law." (Def.'s Mot. at [1]). Specifically, Defendant alleges that "Plaintiff has not met all the requirements of Listing 12.05C because she does not have deficits of adaptive functioning." (Def.'s Br. in Supp. Of Def.'s Mot. for Summ. J. ("Def.'s Br.") at [1], ECF No. 23).

## C. Analysis of the Administrative Law Judge's Decision

Plaintiff raises one assignment of error with respect to the ALJ's decision. Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff qualifies for benefits pursuant to § 12.05C of the Listings.  (Pl.'s Br. at [9], ECF No. 21). Plaintiff primarily takes issue with the ALJ's conclusion that Plaintiff's "disability allowance as a child for 'mild mental retardation,' . . . does not support 'significantly subaverage' general intellectual functioning with 'deficits in adaptive functioning' initially manifested during the developmental period."  (Pl.'s Br. at [9], ECF No. 21).

### 1. Whether substantial evidence supports the ALJ's decision that Plaintiff did not satisfy Listing 12.05C

When determining whether a claimant meets Listing 12.05, the claimant must satisfy two requirements: (1) the diagnostic description of intellectual disability set forth in the introductory paragraph of Listing 12.05, and (2) the severity criteria established in categories A-D of §12.05.  Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).  Thus,

in order to be found disabled under Listing 12.05C, the claimant must satisfy three prongs: (1) she must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22;"  (2) she has "a valid verbal, performance, or full scale IQ of 60 through 70;"  and (3) she has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart. P, Appendix 1, § 12.05.

### a.  Deficits in Adaptive Functioning

The Fourth Circuit noted that Prong 1 alone involves two parts, and if the ALJ finds: (1) "'no deficits in adaptive functioning generally' and (2) 'no deficiency manifested itself before age 22,' then '[e]ither finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that [the claimant] did not satisfy Prong 1.'" Hancock, 667 F.3d at 475.  Deficits in adaptive functioning generally encompass a broad range of cognitive and behavioral traits, and can "include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 Fed.Appx. 214, 218 (4th Cir. 2012).  The absence of certain deficits does not preclude the absence of others, hence any deficit under that general umbrella would qualify Plaintiff as satisfying the first prong.  After careful review of the record, the undersigned finds that the ALJ erred when concluding Plaintiff lacks "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," and that his decision as a whole is not supported by substantial evidence.

The proper inquiry is whether the record supports a finding of deficits in adaptive functioning prior to age 22. In this case, the ALJ opined that Plaintiff's childhood diagnosis of mild mental retardation "appears to be based on child IQ test scores and not any significant subaverage deficits in adaptive functioning, as none were noted on the childhood disability forms," citing Exhibits 8F and 10F. (R 21). The undersigned rejects this assertion. There is no indication in the record that IQ test scores were the primary metric used to determine Plaintiff's childhood disability as the ALJ claimed. Exhibit 8F indicates Plaintiff meets Listing 112.05D and Exhibit 10F indicates she meets Listing 112.05C (R. 409, 419). Like the adult listing, §12.05, the childhood listing, §112.05, requires a claimant to satisfy the diagnostic description of intellectual functioning as set forth in the introductory paragraph. Compare Listing 112.05 (stating *intellectual disability* [is] "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning") with Listing 12.05 (stating *intellectual disability* "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e*, the evidence demonstrates or supports onset of the impairment before age 22"). In short, a claimant cannot meet Listings 112.05C, 12.05D or 12.05C unless the claimant is characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

Furthermore, it is improper for the ALJ to retroactively reevaluate the qualifications that Plaintiff was judged to have met at the time, prior to age 22. The Commissioner will find a claimant's "impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the

introduction." 20 C.F.R. § 461.925 (c)(3). Prior to the age of 22, Plaintiff was found to have met Listing 112.05 three distinct times. (R. 58, 59, 61, 342, 409, 419). Therefore, it is reasonable to conclude she has already satisfied the first prong of Listing 12.05C.

Moreover, even if the undersigned refused to accept that Plaintiff satisfies the diagnostic description introductory paragraph on the basis that this inquiry was previously decided by the Administration, additional evidence in the record supports finding Plaintiff suffers from deficits in adaptive functioning.

Some important factors to consider when determining whether a claimant has deficits in adaptive functioning during the developmental period include whether the claimant is illiterate, showed poor academic performance, lived independently, ever provided care for others, or conversely depends on others to care for her. See Luckey v. Dept. of Health & Human Servs., 890 F.2d 666, 668-69 (4th Cir. 1989); Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *7 (W.D.N.C. May 23, 2012); Rivers v. Astrue, No. 8:10-CV-00314-RMG, 2011 WL 2581447, at *3-4 (D.S.C. June 28, 2011); Holtsclaw v. Astrue, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011); Further important factors include school records and past academic performance. See Salmons, 2012 WL 1884485, at *7 (stating "functional academic skills is the primary measure of deficits of adaptive functioning before age 22."); Rivers, 2011 WL 2581447, at *3 (acknowledging that claimant was placed in special education classes at school, had frequent evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth grade.) A claimant's work history may also be considered. Hancock, 667 F.3d at 475-76.

Plaintiff submitted evidence that she has deficiencies in the areas of functional academic skills, social/interpersonal skills and communication, and that these deficits manifested before age 22. For example, in 1998, Plaintiff's adaptive behavior testing scores were "72, 69, and 66 for [co]mmunication, [d]aily living and [s]ocialization respectively," (R. 331) placing her "along the mildly impaired to borderline impaired continuum." Id. Also in 1998, James Capage, PhD noted Plaintiff's "severe impairments impose marked limitations on [her] functioning in cognitive, social, personal and CP&P domains." (R. 345). Plaintiff was in special education classes from elementary school through high school (R. 358, 439). Further school records dated 2004-2009 showed that assessment of Plaintiff's adaptive behavior found "deficiencies of both economics and socialization." (R. 441). In 2009, her measured IQ scores were in the 50s and 60s, and a month before turning 17 years of age, she was found to be performing math and reading at a third grade level. (R. 416). In 2010, Plaintiff read on a 5.6 grade level, performed math on a 4.2 grade level and spelling on a 6.8 grade level. (R. 457). The record also shows that Plaintiff has never obtained her driver's license, and has failed the test numerous times. (R. 319). Lastly, the ALJ himself confirmed Plaintiff's difficulties in adaptive functioning in her social/interpersonal skills. (See R. 21 noting Plaintiff experienced moderate limitation in social functioning, concentration, persistence, and pace; See also Linaburg v. Comm'r of Soc. Sec., No. 1:13CV177, 2014 WL 3101449, at *8 (N.D.W. Va. July 7, 2014) (noting that "a finding of at least moderate limitations of functioning has been held to be facially in tension with the ALJ's conclusion that claimant lacks deficits in adaptive functioning. See also Nelson v.

Astrue, No. 1:09CV117, 2012 WL 373364 (M.D.N.C. Feb. 3, 2012); Hager v. Astrue, No. 2:09-CV-01357, 2011 WL 1299509 (S.D.W. Va. Mar. 31, 2011).

Despite these limitations, the ALJ reasoned Plaintiff did not have deficits in adaptive functioning because while in high school she participated in track and cross country, she graduated from high school, and since then has lived with friends a few days a week, lived with her boyfriend's family for some time, help babysit, worked cleaning and pulling weeds, cleaned for wages, and volunteered answering phones. (R. 21). Similarly, Defendant argues Plaintiff's ability to personally care for herself; prepare simple meals; babysit, clean, do laundry, wash dishes, shop, read, watch television, camp, exercise, socialize, do yard work, spend time on the computer, go to the movies, the park, restaurants, sporting events, family functions, and church, supports concluding Plaintiff is no longer disabled. However, while these examples of daily activities may support finding Plaintiff does not have deficits in certain areas of adaptive functioning, they do not necessarily negate a finding of such deficits in other areas. See Durden v Astrue, 586 F. Supp.2d 828, 839 (S.D.Tx. 2008) (finding that while claimant's ability to garden, drive and perform "would tend to support a finding that [claimant] does not have deficits in certain areas of adaptive functioning, they do not necessarily negate a finding of such deficits in other areas.") In sum, the undersigned finds the ALJ's conclusion that Plaintiff did not suffer from deficits in adaptive functioning, is not supported by substantial evidence.

### b. IQ Score

Next it must be determined whether Plaintiff satisfies Prong 2, which requires Plaintiff to have a valid IQ score of 60 through 70. "Generally, the results obtained by a

licensed psychologist following the administration of accepted intelligence tests are entitled to considerable weight in Social Security cases although they are not required to be accepted." Maybank v. Astrue, No. 4:08-0643-MBS, 2009 WL 2855461, at *11 (D.S.C. Aug. 31, 2009) (citation omitted). However, the validity of such scores may be discounted when they are found to be inconsistent with substantial evidence in the record, "such as conflicting professional opinions, evidence indicating that the claimant historically achieved higher scores, or has more advanced functional capacities than would be expected from someone with a below-average IQ." Richardson v. Colvin, No. 8:12-CV-03507-JDA, 2014 WL 793069, at *17 (D.S.C. Feb. 25, 2014) (citing Markle v. Barnhart, 324 F.ed 182, 186 (3d Cir. 2003); Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998)).

Here, the record is replete with evidence showing Plaintiff's IQ scores measured below 70 several times prior to turning eighteen years of age. Subsequent to obtaining age eighteen, Plaintiff underwent two separate IQ tests and attained Full Scale IQ scores of 64 and 69, both of which fall within the required range of Listing 12.05C, thereby satisfying Prong 2. (R. 456, 471). While the ALJ highlighted that two different psychologists diagnosed Plaintiff with borderline intellectual functioning as opposed to mild mental retardation, it is unclear whether he discounted Plaintiff's IQ scores, as the inconsistencies necessary for him to discount them were not sufficiently explained. If this inconsistency exists it must be more explicitly articulated. Therefore, further discussion and analysis is required.

### c. Additional and Significant Work-Related Limitation of Function.

Finally, Prong 3 was not specifically addressed in the ALJ's decision. The third prong is satisfied when at step two, the ALJ determines a claimant to have a severe impairment as defined in § § 404.1520(c) and 416.920(c). 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A. <u>See</u> <u>also</u> <u>Jackson v. Astrue</u>, 467 F. App'x 214, 217 (4th Cir. 2012) (finding claimant had satisfied prong 2 after the ALJ found severe impairments and other diagnosed conditions at step two); <u>Luckey v. Dept. of Health & Human Servs.</u>, 890 F.2d 666, 669 (4th Cir. 1989) (holding that a claimant satisfies prong 2 of 12.05C if the claimant has an additional severe impairment or cannot perform his past relevant work). Because the ALJ found Plaintiff suffers from depression/mood disorder, not otherwise specified, borderline intellectual functioning, history of and one current diagnosis of a learning disorder and attention deficit hyperactivity disorder/attention deficit disorder, the third prong of 12.05C is satisfied.

## CONCLUSION

Upon consideration of all the above, the undersigned United States Magistrate Judge finds and concludes that substantial evidence does not support the ALJ's determination that Plaintiff was not disabled during the relevant time period, and recommends that the case be reversed and remanded for the ALJ to determine whether Plaintiff's condition meets Listing 12.05C and to explain how the evidence on the record as a whole supports the decision.

## RECOMMENDATION

For the reasons herein stated, I accordingly recommend Defendant's Motion for Summary Judgment [Doc. No. 13] be **DENIED,** and Plaintiff's Motion for Summary

Judgment [Doc. No. 10] be **GRANTED** and this matter be **REMANDED** for further consideration on the specific issues set forth within.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted on September 27, 2016.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE